## CROPSEY *a.* SWEENEY.

*Supreme Court, First District; General Term, June,* 1858.

### CAUSE OF ACTION.—PLEADING.

One who rendered services in the supposed relation of lawful wife, cannot, on discovering that the marriage was void, recover for them on an implied promise to pay for them.

The Code has not created any new causes of action.

Of the rules of pleading under the Code, in an action founded on an implied assumpsit.

Appeal from an order overruling demurrer to complaint.

This was an action arising out of the following facts, as alleged in the complaint.

On the 25th of August, 1821, the marriage ceremony was solemnized in due form between the plaintiff, Eliza Ann Cropsey—then Eliza Ann Everett—and James Ridgeway, the defendant's intestate. At the time of this marriage, the plaintiff believed that James Ridgeway was free to marry, and that they were lawfully married.

In September of the same year, a few weeks after this marriage, a former wife of James Ridgeway, to whom he was married in 1812, and from whom he had separated in 1815, and who was still living, commenced proceedings in the then Court of Chancery of this State, against him, for a divorce, on the ground of adultery on his part, in contracting this second marriage, the marriage with the plaintiff. In that action she obained a decree.

The plaintiff and James Ridgeway, now supposing that no impediment remained to their lawful union, the marriage ceremony was a second time solemnized between them in the year 1825, and they continued to live together until 1847, when Mr. Ridgeway died, leaving her and eight children surviving.

Mr. Ridgeway was a carpenter and builder, and was worth, at the time of the first marriage, about $1000. By economy and good management, in which he was assisted by the plaintiff, who supposed herself to be his wife, and who labored with her

Cropsey *a.* Sweeney.

own hands, in addition to her household duties, to procure the means for household expenses, his means were largely increased, and he gradually accumulated a fortune, which amounted, at the time of his death, to more than $150,000.

It appeared that Ridgeway had been married once before the marriage which had been dissolved by a decree of divorce, and that descendants of both of these marriages were living; and on his death they claimed the whole of his estate, as his only next of kin.

The complaint alleged that the plaintiff's services rendered thus while standing in the supposed relation of wife to Mr. Ridgeway, were worth to him $40,000, and demanded judgment for that sum.

The defendant demurred, assigning, among other grounds, the following: " That the complaint does not state facts sufficient to constitute a cause of action."

The issue upon the demurrer was tried at a special term in April, 1855, and in May a decision was rendered overruling the demurrer. The defendant appealed to the general term.

By THE COURT.*—SUTHERLAND, J.—Unless the Code, by abolishing the distinction between actions at law and suits in equity, and the forms of such actions and suits, and of pleadings theretofore existing, intended to initiate, and has initiated, new principles of law by which a class of rights and of wrongs, not before the proper subjects of judicial investigation and remedy, can now be judicially investigated and remedied, the facts stated in the plaintiff's complaint in this action do not constitute a cause of action, and the demurrer of the defendant to that complaint is well taken.

I am not aware that any one has ever claimed for the Code, or charged against the Code, a mission or purpose so bold, novel, sweeping, and dangerous.

It cannot be supposed that the abolition in words of the distinction between actions at law and suits in equity by the Code was intended to break up the well-settled fundamental principles of limits of common law and equitable jurisdiction, and open to courts, as proper subjects of judicial discretion, a class

---

* Present, Davies, P. J. ; Clerke and Sutherland, JJ.

of moral wrongs or misfortunes not before the legitimate subjects of legal or equitable investigation or redress.

Nor can it be supposed that the abolition of the forms of actions was intended to create or justify novel and unprecedented *causes of action.*

Although the form of the action of assumpsit and of the pleadings therein has been abolished, yet the obligation of contracts, and the distinction between an express and an implied assumpsit, remain; and notwithstanding the Code, in a large class of cases now as before the Code, it is only on the theory of an implied assumpsit, " inferred from the conduct, situation, or mutual relations of the parties," that justice can be enforced, and the performance of a legal duty compelled.

It is no longer necessary, and perhaps not even proper, in such a case, for the plaintiff to allege in his complaint any promise on the part of the defendant; but he must state facts, which, if true, according to well-settled principles of law, would have authorized him to allege, and the court to infer, a promise on the part of the defendant before the Code.

The form of assumpsit is no longer necessary, nor perhaps even proper, in such a case; but facts sufficient to raise it, and to put it on paper, were it lawful to do so, are still necessary.

It follows, from what has been said, that the principal question raised by the demurrer in this case is, there being no express promise pretended or alleged in the complaint, whether the law implies a promise from the facts therein stated.

The action is for services rendered by the plaintiff for James Ridgeway in his lifetime, while the plaintiff was standing in the supposed relation of wife.

It is alleged in the complaint that the marriage ceremony was solemnized in due form of law between the plaintiff and James Ridgeway in 1821, she believing that they were lawfully married, and living and cohabiting with him as his wife; that on or about the 15th of September, 1821, proceedings were instituted in the Court of Chancery of this State against James Ridgeway for divorce by Catharine Ridgeway, to whom he had been married under the name of Catharine Dob, in the year 1812, and from whom he had separated in 1815; that on or about the 13th day of June, 1822, a decree was made dissolving the marriage between the said Catharine and James; that about

the summer of 1825, the marriage ceremony was again solemnized in due form of law between the said plaintiff and the said James Ridgeway; that before and at the time of the ceremony of marriage in 1825, the plaintiff was informed, and believed, that the said James Ridgeway was competent to contract marriage with the plaintiff, and that the plaintiff believed that the marriage was valid, until after the death of James Ridgeway; that from the time of the first marriage ceremony until James Ridgeway's death in 1847, the plaintiff and the said James lived and cohabited together as husband and wife, and were known and reputed as such; that at the time of the first marriage ceremony, James Ridgeway was a carpenter, and possessed of property not exceeding $1000 in value; that the plaintiff, in addition to her ordinary household duties, and the usual care and management of the domestic affairs of James Ridgeway, labored to promote the success of his undertakings and to procure the means of defraying the household expenses, and in the conduct and management of the domestic affairs practised the utmost economy; that the said James was successful in his business and accumulated a fortune, which at the time of his death amounted to $150,000; that during the entire period the plaintiff so lived and cohabited with James Ridgeway she had the entire management of his domestic affairs, and labored, by industry, economy, care, and attention to her duties, to promote his interests and success; and that it was owing to her efforts that he was enabled to accumulate so much property; that during the same period she bore unto him twelve children, eight of whom are living; that prior to the marriage of James Ridgeway with Catharine Dob, he had once been married, and had issue by both marriages; that one child, Eliza Ann, wife of Jeremiah Rowland, and one grandchild, George W. Ridgeway, surviving issue of his deceased son Joseph, the issue of his first marriage; and one grandchild, the sole surviving issue of a daughter by his second marriage, claim to be the only lawful heirs of James Ridgeway, and entitled to his estate.

The plaintiff claims that the services rendered by her to James Ridgeway, in and about the management of his household affairs, and otherwise, as in the complaint set forth, were rendered at his request, and were reasonably worth $40,000, and demands judgment for that sum, with interest from November 21st, 1847.

It is not alleged in the complaint that James Ridgeway, in his lifetime, ever knew or supposed, after the last marriage ceremony, that the plaintiff was not his lawful wife; nor is it alleged that when his first supposed marriage with the plaintiff took place, that he knew that his wife Catharine was living, and he unable to contract a legal marriage with the plaintiff.

No doubt, from the time of the first marriage ceremony to the institution of the suit for divorce, and from the time of the second marriage ceremony until his death, James Ridgeway and the plaintiff both supposed they were lawfully married, and that he lived and died supposing the plaintiff was his lawful wife.

Now after his death, upon the assumption that his supposed marriage was not legal, will the law permit us or authorize us to turn this supposed relation of husband and wife into the relation of master and servant, and thus infer or imply a promise on the part of James Ridgeway, in his life, to *pay*, and an expectation on the part of the plaintiff to *receive pay*, for the services rendered by the plaintiff while so standing in the supposed relation of husband and wife? The very ground upon which the plaintiff's case appeals so strongly to the sympathies of the court, forbids any such fiction, inference, or implication. Her own story (no doubt truthful) of her long devoted faithful love and services as a *wife* and *mother*, will not permit us to say that she is legally entitled to receive pay for those services *as a servant*.

True, the law will not presume that work or labor performed *as a servant or laborer* were voluntary, and performed without any view to compensation, but the law cannot presume that the domestic and household work and services of a wife for a husband are performed with the view to pay as a servant or laborer. The law would do injustice to the plaintiff herself by implying a promise to her to pay for these services; and respect for the plaintiff herself, as well as for the law, compels us to infer and hold that these services were performed, not as a servant with a view to pay, but from higher and holier motives, and thus, therefore, her complaint does not constitute any cause of action.

The order of the special term overruling the demurrer must be reversed, and the defendant must have judgment on the demurrer.